## Commonwealth v. Murphey

*Charles G. Hasson,* for Commonwealth.

*Wayne G. Wolfe,* of *Spence, Custer, Saylor, Wolfe & Rose,* for defendant.

McDONALD, J., February 25, 1965.—This matter has been heard de novo upon allowance of appeal from the verdict and judgment of an alderman. The prosecutor, Marlin Helmick, filed an information charging Charles E. Murphey and Hazel Murphey, husband and wife, with violation of the Act of June 24, 1939, P. L. 872, sec. 934, 18 PS §4934.

Defendants are the owners of lot no. 68 on the Reginald Parsons subdivision of Dundee Lane in Westmont Borough. The lot fronts on Pitt Avenue and extends back to a 16-foot alley in the rear. The prosecutor is the owner of lot no. 70 on the same plan. His lot fronts on Sunshine Avenue and extends back to the same alley. Lots 68 and 70 are back to back, separated by the aforementioned alley. The prosecutor's lot is occupied by a tenant.

The plan of lots referred to above was recorded on June 3, 1927. The alley was never accepted by the borough. It has not been opened or used, and therefore

is not a public way. The Act of May 9, 1889, P. L. 173, sec. 1, 36 PS §1961, provides that when an alley has been laid out but not opened or used by the public for 21 years, it shall not be opened "without the consent of the owner or owners of the land on which the same has been, or shall be, laid out." The failure to open or use the alley, however, does not affect any private easement that may have been acquired. It does, however, terminate any public right in the alley.

The predecessor in title to defendants planted a row of bushes in the alley, approximately along the center line, and according to the prosecutor certain of these are 20-21″ over the center line on the one-half portion of the alley adjoining his lot. He contends there were 14 spiraea and 15 snowberry bushes in the row. Husband defendant, however, testified there was only 1 snowberry bush. The testimony indicates the bushes had grown to a height of 8½-12 feet, and had a branch spread of about 6 feet.

On November 12, 1964, defendants cut the bushes to a height of about 22 inches. They deny any were destroyed, but on the contrary, husband defendant said in his experience with similar type bushes, they will grow better than ever. Prosecutor, however, testified the snowberry bushes had been removed, and the spiraea were cut so drastically they were destroyed.

The prosecutor, after demanding payment of $725 as damages, and upon refusal of defendants to make payment, filed an information charging them with willful and malicious destruction of shade trees along or on the aforesaid alley. The information contained language essentially the same as the Act of 1939, P. L. 872, sec. 934.

The Act of 1939 was intended to protect shade and/or fruit trees growing along public streets, roads and highways. This view is strengthened by a review of legislation providing for the establishment of a

shade tree commission which is authorized to plant, remove, maintain and protect shade trees on the public highways in the borough: Act of May 4, 1927, P. L. 519, art. XXVII, sec. 2730, as amended, 53 PS §47730. Similar legislation has been enacted for other municipalities. This legislation is derived from earlier acts which predate the act and its predecessor under which the charges here have been brought. Obviously, the purpose of the act making it a crime to cut, etc. shade and fruit trees along or on a street, road or other highway is to implement the work of the shade tree commission. In our view, the Act of 1939 applies only to public streets, roads and highways. A private owner has recourse under the Act of 1939, P. L. 872, sec. 935, 18 PS §4935.

While we do not decide whether the generic term "street" includes an "alley," we are satisfied the appeal here must be sustained and defendants found not guilty, since the bushes which were cut were not growing along or on a public street, in view of the character of the aforesaid unopened alley under the Act of 1889 above.

Assuming arguendo the charge was properly laid, we must conclude the evidence falls far short of the weight necessary to satisfy us beyond a reasonable doubt of the elements of willfulness and maliciousness.

The testimony indicates contradictory opinions about the effect of the cutting. On the one hand, husband defendant says in his experience the bushes were not destroyed but will grow, and on the other, prosecutor maintains the cutting is so drastic they have been for all intents and purposes destroyed. If, as husband defendant contends, it was his intention to trim the bushes, with the likelihood they would grow again, it cannot be said the act was done willfully and maliciously. Unfortunately, we have no expert testimony as to the effect of the cutting. Complete removal of the bushes, or a mutilation to a point where even a lay

person would be able to determine they have been destroyed, would certainly be strong evidence against defendants' position. However, the logical question occurs, if they intended to destroy the bushes willfully and maliciously, why were they not removed completely?

The prosecutor contends, although no expert testimony was produced, that the bushes were on the center line in part, and in part on his one-half of the alley. Again, no expert testimony was offered to show the exact location of the center line. This, in itself, would not be important if the act were applicable here, since it covers trees growing "on or along" the streets, etc. However, there appears to be a bona fide dispute about ownership of the bushes. It is agreed by both parties they were planted by defendants' predecessor in title. In such case, assuming they had a property right in the bushes, their act would have been rightful and consequently, would weaken the claim that it was done willfully and maliciously. This conclusion would not change even though it might develop subsequently the bushes were not on the center line, or that part of the alley adjoining their lot. Their state of mind depends upon the circumstances existent at the time of the act, rather than those which may subsequently develop.

A willful and malicious act is founded upon the state of mind motivating it. To be willful, it must be done with a bad purpose and without any color of right. To be malicious, it must be done wantonly and with a willful disregard of the rights of others. In view of the above circumstances, we are not satisfied beyond a reasonable doubt, even if the charges had been properly brought, that defendants' act fulfills the evidential requirement.

We are not here concerned with the civil aspect of the controversy between the prosecutor and the defendants. As seen by the above discussion, the questions of

ownership, character of the alley and effect of the cutting on the life of the bushes, present intricate and complex problems. The measure of proof, however, is not as heavy as that required to sustain a criminal charge. Since the act under which the charge has been brought is in derogation of the common law, and proof must measure up to the requirements of evidence in criminal cases, we are satisfied the Commonwealth has failed to make out a prima facie case, and therefore find the defendants not guilty.

### VERDICT AND ORDER

Now, February 25, 1965, after hearing de novo and upon consideration of the record, defendants are found not guilty and costs are placed on the county.